IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MARGARET BRESHEARS                                                        PLAINTIFF


                    v.            Civil No. 2:15-cv-02002-MEF


CAROLYN W. COLVIN, Commissioner
Social Security Administration                                           DEFENDANT


**<u>MEMORANDUM OPINION</u>**

     Plaintiff, Margaret Breshears, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (the Commissioner) denying her claims for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**     **<u>Procedural Background</u>:**

     On August 2, 2012, the Plaintiff filed an application for DIB alleging disability since October 30, 2010,[1] due to depression, back pain, osteoarthritis, neuropathy, obesity, and diabetes. (Tr. 193-202, 222, 254-255, 258, 265) Plaintiff's application was denied initially and on reconsideration. (Tr. 83-88, 94-108) An Administrative Law Judge ("ALJ") held an administrative hearing on June 20, 2013. (Tr. 30-64) Plaintiff was present and represented by counsel.

---

[1] In her application, the Plaintiff originally alleged an onset date of August 14, 2008. (Tr. 193-202) However, the ALJ noted the Plaintiff had filed two prior claims, with the most recent being final on October 29, 2010. (Tr. 33-34) Accordingly, the Plaintiff amended her onset date to October 30, 2010. (Tr. 11, 34)

At the time of the administrative hearing, the Plaintiff was 47 years old and possessed the equivalent of a high school education. (Tr. 23, 36) She had past relevant work ("PRW") experience as a cashier/checker, a security guard, and a claims clerk. (Tr. 22, 39-41, 50, 106-107, 223, 246-253)

On September 19, 2013, the ALJ concluded Plaintiff's hypertension, insulin dependent diabetes mellitus ("IDDM"), back pain, osteoarthritis, obesity, and depression were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 13-15) After partially discrediting the Plaintiff's subjective complaints, the ALJ determined the Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work involving only simple tasks and instructions. (Tr. 15) With the assistance of a vocational expert, the ALJ concluded the Plaintiff could perform work as a circuit board assembler, charge account clerk, and eyeglass frame polisher. (Tr. 23)

The Appeals Council denied the Plaintiff's request for review on December 8, 2014. (Tr. 1-4) Subsequently, Plaintiff filed this action. (ECF No. 1) This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (ECF Nos. 9, 10)

## II.   <u>Applicable Law</u>:

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v.* Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that

supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42

(8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000);

20 C.F.R. § 404.1520(a)(4)(v).

**III.    Discussion:**

Plaintiff raises three issues on appeal: (1) whether the ALJ fully developed the record; (2)

whether the ALJ conducted a proper credibility assessment; and, (3) whether substantial evidence

supports the ALJ's RFC determination.

The Court has reviewed the entire transcript. The complete set of facts and arguments are

presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent

necessary.

**A.    Duty to Develop the Record:**

Plaintiff contends the ALJ failed to fully develop the record. The ALJ owes a duty to a

claimant to develop the record fully and fairly to ensure his decision is an informed decision based

on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). However, the ALJ

is not required to function as the claimant's substitute counsel, but only to develop a reasonably

complete record. *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (quoting *Clark v. Shalala*,

28 F.3d 828, 830-31 (8th Cir. 1994). While "[a]n ALJ should recontact a treating or consulting

physician if a critical issue is undeveloped," "the ALJ is required to order medical examinations

and tests only if the medical records presented to him do not give sufficient medical evidence to

determine whether the claimant is disabled." *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010)

(quotation, alteration, and citation omitted).

Here, the Plaintiff makes a vague argument that the ALJ should have developed the record,

but points to no evidence that should have been requested and/or ordered to make the record

complete. After reviewing the record before the Court, the undersigned is satisfied that the record

contains sufficient medical evidence to determine whether the Plaintiff is disabled. Any argument that ordering additional objective tests, such as MRIs or CT scans, or consultative exams would have somehow changed the outcome of the case is speculative at best. [2]

Plaintiff sought out treatment for neck, back, and knee pain, as well as occasional pain in her shoulder. Treatment notes predating the relevant time period reveal some intermittent tenderness to palpation and range of motion deficits, documented by Nurse Practitioner Peggy DeFoure ("NP") and Dr. Ralph Maxwell at the Simmons Care Clinic. (Tr. 315, 324, 434, 605, 614, 632-633) However, x-rays of her left shoulder and lumbar spine showed no abnormalities. (Tr. 311, 312, 367, 383, 431, 466, 480, 577, 602, 641, 655)

On June 7, 2010, the Plaintiff requested a power chair, stating she could no longer exercise due to exertional chest pain. (Tr. 309,553, 694) She also reported shortness of breath when ascending and descending stairs. Interestingly, she reported no arthralgias, and the doctor specifically noted no degenerative joint disease or musculoskeletal deficits. When she returned on June 18, she complained of joint pain, but again, the doctor noted no physical findings. (Tr. 308, 552, 693) On June 30, the Plaintiff renewed her request for a power chair, claiming her back pain prevented her from exercising. Nurse Defoure offered her Mobic for back pain; advised her to diet, exercise, and lose weight; and, recommended that she follow-up with Dr. Maxwell on July 12. (Tr. 307, 551, 692) Records reveal the Plaintiff left angry, refusing the medication because she allegedly could not get it filled. We can also find no record to indicate she followed-up with Dr.

---

[2] The Eighth Circuit recognizes the doctrine of harmless-error in Social Security cases. *See Byes v. Astrue,* 687 F.3d 913, 917–18 (8th Cir. 2012). In order to prove an error was not harmless, the Plaintiff must provide "some indication that the ALJ would have decided differently if the error had not occurred." *Id.* at 917 (citing *Van Vickle v. Astrue,* 539 F.3d 825, 830 (8th Cir.2008); *Hensley v. Barnhart,* 352 F.3d 353, 357 (8th Cir.2003)). And, here, the Plaintiff has failed to offer any proof of harm.

Maxwell in July. In early October 2010, the Plaintiff was offered and refused an MRI. Noting she could ambulate, the NP administered injections of DepoMedrol and prescribed Mobic for lower back pain. (Tr. 306, 550, 691)

Records dated October 2010[3] and later provide even fewer physical findings in support of the Plaintiff's subjective complaints. In November, Plaintiff requested Naproxen for joint pain. (Tr. 305, 405, 549, 690) Dr. Ralph Maxwell advised her not to take both Naproxen and Mobic at the same time, due to potential gastrointestinal and kidney complications. In February 2011, she complained of back pain after lifting her power chair. (Tr. 302, 401, 546, 687) Nurse DeFoure documented a negative straight leg raise test, the ability to ambulate without assistance, and the ability to rise from a seated position without difficulty. She administered a Toradol injection and prescribed Flexeril. On August 3, 2011, the NP administered a Toradol injection for joint pain and myalgia, but documented no physical findings. (Tr. 301, 402, 686, 704-706) The Plaintiff returned on August 11 and received a second injection. (Tr. 300, 399-400, 684-685) The injections were at least somewhat successful in treating her pain, as she did not return with significant complaints of pain for approximately seven months. *Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling).

In March 2012, Nurse Defoure noted tenderness in the thoracic and lumbar spine with a full range of motion in both knees. (Tr. 296, 395, 680) On April 4, she charted pain with range of motion in the lumbar spine, but negative straight leg raise testing bilaterally and a full range of motion with no tenderness or swelling in either knee. (Tr. 295, 394, 679) Although an MRI was

---

[3] October 30, 2010, is Plaintiff's amended onset date.

recommended, the Plaintiff refused. An x-ray of her right knee taken in April 2012 showed very mild degenerative changes. (Tr. 381, 422)

On April 4, 2012, an exam revealed pain with range of motion in the lumbar spine, negative bilateral straight leg raise testing, and a full range of motion in the knees with no edema or tenderness. (Tr. 295, 394, 679) She advised the NP she had applied for disability and requested an MRI of her knees and back. In May, the Plaintiff requested an orthopedic referral for chronic right lower extremity pain. (Tr. 387, 672-674, 717) However, the record contains no evidence to suggest that she followed through with either referral. In November 2012, emergency room records document a full range of motion in all joints. (Tr. 737-756) Later that month, a second ER record reveals no musculoskeletal complaints with no tenderness and a full range of motion in her back. (Tr. 769-773)

On January 4, 2013, the Plaintiff again reported no musculoskeletal complaints, and a physical exam documented a normal range of motion in all joints. (Tr. 761-768) In February 2013, she established care at River Valley Primary Care Services. Despite complaints of knee pain in May, a physical examination showed no knee abnormalities with a normal gait and stance. At this time, she advised Dr. Thinh Nguyen the Meloxicam worked "ok" for her osteoarthritis of the knee.

The records also document Plaintiff's treatment for uncontrolled insulin dependent diabetes, but indicate she failed to follow the recommended diet, exercise as advised, lose weight as advocated, and take her insulin as prescribed. (Tr. 294, 295, 297, 302, 307, 309, 311, 314, 315, 316, 318, 319, 320, 324, 330, 387, 448, 726-728, 818-819). *Choate v. Barnhart,* 457 F.3d 865, 872 (8th Cir.2006) (noncompliance with a physician's directions or prescribed treatment is a valid reason to discredit a claimant's subjective allegations). Although the Plaintiff contends that her failure to fill her insulin prescriptions was secondary to financial hardship, we can find no evidence

7

to indicate she was ever refused medication due to an inability to pay. *See Goff,* 421 F.3d at 793 (failure to take prescription pain medication was relevant to credibility determination where claimant said she could not afford treatment but there was no evidence she was ever denied medical treatment due to financial reasons). Moreover, she failed to produce any evidence indicating that she applied for benefits through a prescription assistance program. *See Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir. 1992) (lack of evidence that the claimant attempted to find any low cost or no cost medical treatment for her alleged pain and disability is inconsistent with a claim of disabling pain). And, it appears she was aware of such a program as she had received an application for benefits from her doctor, but had not yet completed it.

Similarly, the Plaintiff has alleged disability due to depression, but the record contains no evidence of any formal mental health treatment. Prior to the relevant time period, practitioners at the Simmons Care Clinic prescribed Prozac to treat depression and it appears to have been effective in treating her symptoms. (Tr. 312, 314, 315, 318, 319, 322, 331, 333) Records document medication refills, but no mention of persistent symptoms. (Tr. 306, 307, 308, 311, 312, 315, 316, 318, 319, 320, 322, 324, 325, 330) Beginning in October 2010, we can find no treatment records to document consistent complaints of depression, prescriptions for anti-depressants, or even diagnoses of depression. In September 2012, the Plaintiff advised Dr. Patricia Walz that she took the Prozac on an as needed basis.

The record contains two physical RFC assessment from Nurse Defoure, two physical assessments from non-examining consultants, and one mental assessment from a non-examining source. To develop the record, the ALJ also ordered a consultative mental evaluation. Accordingly, the undersigned finds that the record contains sufficient evidence upon which the ALJ could base a disability determination. No further development of the record was required.

B.      **Credibility Analysis:**

Plaintiff also contests the ALJ's credibility determination. The ALJ is required to consider all the evidence relating to a Plaintiff's subject complaints, including: (1) daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitation and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and, (5) function restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In so doing, the ALJ must also consider the claimant's prior work record, observations made by third parties, and the opinions of treating and examining physicians. *Polaski*, 739 F.2d at 1322.

An ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them. *Id*. However, "[a]n ALJ . . . may disbelieve subjective reports because of inherent inconsistencies or other circumstances." *Wright v. Colvin*, 789 F.3d 847, 853 (8th Cir. 2015) (*citing Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) (quotation and citation omitted). The Eighth Circuit has observed, "[o]ur touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

The Plaintiff alleges that the ALJ failed to provide sufficient reasons for discrediting her subjective complaints. Although the ALJ did not specifically cite to *Polaski*, we disagree. *See Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011) (explaining ALJ is not required to discuss methodically each *Polaski* element as long as he acknowledged and examined those considerations before discounting subjective complaints). The ALJ based his credibility determination on the following factors: (1) the absence of objective evidence to support the Plaintiff's subjective complaints; (2) Plaintiff's noncompliance with insulin, diet, and exercise; (3) Plaintiff's failure to follow through with MRIs, CT scans, and orthopedic consultations as recommended by her treating sources; (4) the conservative nature of the Plaintiff's treatment; (5) the Plaintiff's use of over-the-

counter pain relievers such as Aleve and Ibuprofen and non-steroidal anti-inflammatories such as Meloxicam to treat her pain; (6) the absence of formal mental health treatment for her alleged depression; and, (7) her reported daily activities. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider); *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (holding that claimant's failure to follow prescribed course of treatment weighed against credibility when assessing subjective complaints of pain); *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (holding conservative treatment is inconsistent with disability); *Hepp v. Astrue*, 511 F. 3d 798, 807 (8th Cir. 2008) (moderate, over-the-counter medication for pain does not support allegations of disabling pain); *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment).

We also note some inconsistencies between the activities the Plaintiff testified she performed and the activities she actually performed or informed examining doctors she performed. Plaintiff testified she could clean only one room per day, prepare simple meals, separate the clothes for her son to wash, drive a car, watch television, and play video games. (Tr. 44-45) However, she reported to Dr. Patricia Walz that she washed both the laundry and the dishes. (Tr. 721-722) Further, the Plaintiff testified she generally shopped in stores for groceries and other items, but said she used an electric cart to do so. (Tr. 45-46) She later admitted that she shopped between 2:00 am and 3:00 am, at which time the carts are often unavailable. (Tr. 47) Moreover, in February 2011, Plaintiff stated she injured her back lifting her power chair. (Tr. 302). Then, on December 11, 2012, the Plaintiff reportedly pulled a muscle in her back while trying to clean her kitchen

floor. (Tr.258) It seems clear the Plaintiff was capable of performing more activities than she included in her adult function report and testified to at the administrative hearing.

The Plaintiff contends that the ALJ did not properly consider her pain or side effects of her medications. To the contrary, the ALJ found the Plaintiff's pain to be credible. Based on the aforementioned factors, however, he concluded the evidence did not support the level of limitation she alleged. (Tr. 19) We agree. As for her alleged medication side effects, we can find no mention of medication side effects in the medical records. *See Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) (alleged side effects were properly discounted when Plaintiff did not complain to doctors). Therefore, after reviewing the record in this case, the undersigned finds substantial evidence to support the ALJ's credibility determination.

### C.    RFC:

Plaintiff's final argument is that substantial evidence does not support the ALJ's RFC determination. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545. A disability claimant has the burden of establishing his or her RFC. *Vossen v. Astrue,* 612 F. 3d 1011, 1016 (8th Cir. 2010). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a

claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Plaintiff insists she has walking limitations that require her to sit and rest after 5 to 10 minutes due to pain and shortness of breath and mental limitations that are not included in the RFC. We note, however, that the ALJ found the Plaintiff capable of performing sedentary work involving only simple tasks and instructions. Sedentary work, by definition, requires only occasional standing and walking. 20 C.F.R. § 404.1567(a). Although Nurse DeFoure opined that the Plaintiff would need to take unscheduled breaks, periodically elevate her feet during an 8-hour shift, and would require a sit/stand/walk option (Tr. 291), these extreme limitations are not supported by the overall record. As mentioned in the sections above, the objective medical evidence does not support the Plaintiff's allegation of disability. Instead, physical exams documented few physical limitations. X-rays revealed only mild degenerative changes in the knee. *See Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (quoting *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010)) (commissioner may discount or disregard opinion of treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions). Further, we agree with the ALJ's determination that the Plaintiff's obesity likely exacerbated her pain, rendering her capable of no more than sedentary work.

Toradol injections appear to have been successful in treating her pain, as she improved each time injections were administered. The Plaintiff also told Dr. Thinh Nguyen that the Meloxicam was helping her knee pain. *See Patrick*, 323 F.3d at 596 (if an impairment can be controlled by treatment or medication, it cannot be considered disabling). Further, Plaintiff's reliance on over-the-counter pain medications to treat her back pain suggest her pain was not as

severe as alleged. *See Hepp*, 511 F. 3d at 807 (moderate, over-the-counter medication for pain does not support allegations of disabling pain).

Treatment non-compliance is also a major factor in this case. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) (failure to follow a recommended course of treatment weighs against a claimant's credibility). The Plaintiff refused to undergo additional objective testing, follow through with consultative exams, take insulin as prescribed, follow the strict diet prescribed, exercise, and lose weight. Although she contends her financial hardship excuses her failure to follow treatment, she has failed to produce any evidence to show she was refused treatment or medication due to her financial status.

Despite the Plaintiff's allegations of depression, the record reveals no evidence of ongoing treatment for depression. She was diagnosed with depression prior to the relevant time period and prescribed Prozac. Records indicate the Prozac was helpful, when taken regularly. Additionally, in September 2012, she reported taking it only on an as needed basis. We also note the absence of evidence to document significant complaints of depression or formal mental health treatment during the relevant time period.

Plaintiff also contends that borderline intellectual functioning ("BIF") limited her ability to perform work-related activities. The record does not contain a diagnosis of BIF. Intellectual testing conducted in October 2012 revealed a full scale IQ of 83, which equates with a low average IQ. (Tr. 726-728) The ALJ appears to have adequately accounted for this in the limitation concerning simple tasks and instructions.

Dr. Patricia Walz conducted a consultative mental evaluation in September 2012 (Tr. 720-724) The Plaintiff's primary complaints were physical in nature, although she did state she gets "kind of depressed" and "stressed out" at times. After diagnosing the Plaintiff with adjustment

reaction with depressed mood; history of alcohol abuse versus dependence in sustained remission; and, probable mild learning disorder in math, Dr. Walz assessed her with a global assessment of functioning score of 55-65. Further, she opined the Plaintiff possessed fair social skills and adequate attention, concentration, and persistence. However, Dr. Walz concluded the Plaintiff would not be able to hold down a white-collar job requiring math skills and exhibited a slower speed of information processing.

On December 28, 2012, Dr. Jerry Henderson completed a non-examining, consultative mental RFC assessment (Tr. 120-124) After reviewing the Plaintiff's medical records, he concluded she would have moderate limitations in the following areas: maintaining attention and concentration for extended periods; sustaining an ordinary routine without special supervision; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors; responding appropriately to changes in work setting; setting realistic goals; and, making plans independently of others. Dr. Henderson ultimately opined that the Plaintiff was capable of unskilled work where the interpersonal contact is incidental to the work performed and the tasks are learned and performed by rote with few variables; little judgment; and simple, direct, and concrete supervision.

The undersigned is of the opinion that substantial evidence supports the ALJ's RFC determination. The ALJ accounted for the Plaintiff's hypertension, diabetes, back pain, osteoarthritis, and obesity in his assessment of sedentary work. Further, the ALJ properly considered her low average IQ and intermittent/situational depression when limiting her to work involving simple tasks and instructions.

**IV.**     **Conclusion:**

Having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and the decision is affirmed. The undersigned further orders that the Plaintiff's Complaint be dismissed with prejudice.

DATED this 3rd day of March, 2016.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

15